# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | |
|---|---|
| In the matter of: ) | |
| ) | Chapter 13 Case |
| SANDRA C. TRAUB ) | |
| ) | Number <u>10-41394</u> |
| *Debtor* ) | |
| ) | |
| ) | **FILED** |
| ) | Lucinda B. Rauback, Clerk |
| WELLS FARGO BANK, N.A. ) | United States Bankruptcy Court |
| d/b/a America's Servicing Company, ) | Savannah, Georgia |
| Its Successors and/or Assigns ) | By rsimmons at 4:20 pm, May 05, 2014 |
| ) | |
| *Movant* ) | |
| ) | |
| v. ) | |
| ) | |
| SANDRA C. TRAUB ) | |
| and ) | |
| O. BYRON MEREDITH, III, TRUSTEE ) | |
| ) | |
| *Respondents* ) | |

## OPINION AND SUPPLEMENTAL ORDER

Sandra Traub ("Debtor") filed her voluntary Chapter 13 petition on July 2, 2010, and as will be discussed *infra*, a *pro se* Motion for Stay, Hearing, and Relief on November 27, 2012. Dckt. Nos. 1, 67. Wells Fargo Bank, N.A. ("Wells Fargo") filed a Motion for Final Order on Motion for Relief from Stay on May 22, 2013. Dckt. No. 93. The case came on for hearing on March 12, 2014. After consideration of the pleadings, the parties' stipulations, the evidence, and applicable law, I make the following Findings of Fact

AO 72A
(Rev. 8/82)

and Conclusions of Law.

## FINDINGS OF FACT

The pre-trial hearing for Debtor's Motion for Stay, Hearing, and Relief was held on April 2, 2013. Dckt. No. 90. Prior to that hearing the parties entered into a Pre-Trial Stipulation which was accepted by the Court and is quoted herein verbatim:

> (1) Counsel for the parties conferred formally in the preparation of this Stipulation on 3/25/13, and explored the possibility of settlement. Counsel conferred informally on numerous other occasions to discuss the facts, law and possibility of settlement.
> (2) The parties stipulate that the following facts are not in dispute.
>    (a) The Debtor filed a Chapter 13 case on July 2, 2010.
>    (b) Wells Fargo Bank is a creditor in the case and holds a claim which purports to be secured by a valid security deed against the Debtor's residence.

Dckt. No. 89. At the hearing held on March 12, 2014, counsel for Wells Fargo proffered a narrative of the case history. Counsel for Debtor had no objection to the document; therefore, the Court accepts the narrative as additional stipulated facts. The narrative reads verbatim:

> Background history of Motion for Relief
>
> The case was filed July 2, 1010 [sic]. A proof of claim was filed in the case by the lender at the time, ASC, for seven pre-petition payments. The loan was subsequently assigned to Wells Fargo Bank, N.A.
>
> The secured real property is 106/108 East 32nd Street in

AO 72A
(Rev. 8/82)

2

Savannah. The lender is Wells Fargo Bank, N.A.

The Chapter 13 plan proposed to pay Wells Fargo direct on its loan.

The motion for relief was filed on March 21, 2012. The motion alleged that the post-petition arrearage due was from September of 2011 forward...or seven payments.

The initial hearing on the motion was set for April 9, 2012.

One week prior to the hearing updated numbers were provided to counsel. The arrearage remained the same with the exception that the April payment was now due, meaning eight payments outstanding.

We received information from counsel that the Debtor disputed an arrearage and requested a payment history. We obtained that and provided to counsel on April 5, 2012.

The April 9, 2012 hearing was continued to allow counsel and the Debtor more time to review the payment history as well as the Debtor indicated she was trying to obtain additional funds to put toward a cure. She did tender $1051.23 at the hearing, or one payment.

The next hearing was set for May 23, 2012. At that hearing an interim order was submitted that provided the Debtor would tender $2000 by May 25. Those funds were tendered. A cure order was then sent to counsel on May 25 that provided for a six month cure on the remaining arrearage.

The Debtor would not respond to counsel's requests to sign that order so on June 22, 2012, we prepared and sent a new order that included the June payment in the cure. That order was entered on June 28, 2012.

In August of 2012, we were contacted through counsel in Atlanta that the suspense figure in the order of $286.41 was not correct by $40.68, and requested an amended order to account for that sum. The lender also pointed out that the July and August regular payments had not been

>made nor had the July 15, 2012 cure payment (first one). Counsel was contacted on August 14 and advised of the status. We followed up with counsel on August 20. Counsel indicated there had not been any contact from the Debtor and so we advised the lender it could proceed with a notice of default since the strict compliance provisions of the court's order had been violated.

In November 2012, a law firm in Atlanta sent Debtor and her counsel a letter advising of her default of the June 28, 2012, Order and providing her a fourteen (14) day period to cure the default. On November 27, 2012, Debtor filed her *pro se* Motion. At the initial hearing on Debtor's Motion held December 10, 2012, Debtor raised an issue regarding the precise arrearage amount that was included in the June 28, 2012, Order. The Court held that Debtor was entitled to know the exact amount owed on that date and set an evidentiary hearing for Wells Fargo to provide an accounting of Debtor's loan. At the pre-trial hearing on April 2, 2013, the Court made it clear that it would not entertain any irrelevant assertions of Debtor's personal mistrust of the lender or her generic allegations of lack of good faith on the part of the lender which permeated her prior presentations. Dckt. No. 90. Rather, the trial would be evidence-based and limited to Wells Fargo establishing Debtor's payment history and any rebuttal evidence that Debtor might present. *Id*. After the pre-trial hearing on Debtor's Motion, Wells Fargo filed its Motion for Final Order on Motion for Relief from Stay, limiting its factual foundation to Debtor's failure to tender any regular monthly payments or any of the cure payments required by the June 28, 2012, Order. Dckt. No. 93. The hearing on the two Motions was originally scheduled for May 28, 2013, but was continued to August 14, 2013, and later to March 12, 2014, for various reasons.

At the March 2014 hearing, evidence was produced to establish Debtor's payment history. Debtor's last payments of $1051.63 and $2000 received May 8, 2012, and June 5, 2012, respectively were accounted for in the payment history. Wells Fargo's witness, a loan verification analyst, testified to the accuracy of the records, and further stated, that in his opinion, there was nothing irregular in the records to raise suspicion. They indicate that Wells Fargo has received no money from Debtor since the $2000 payment on June 5, 2012. The analyst also testified to the accuracy of the arrearage amount included in the June 28, 2012, Order.

Debtor did not attend the hearing nor provide her attorney with any records to dispute Wells Fargo's evidence. Because Debtor never substantiated any of her claims and because Wells Fargo presented documentation and testimony establishing Debtor's payment history and the accuracy of the arrearage included in the June 28 Order, the Court found cause to grant stay relief and signed an order to that effect on April 14, 2014. *See* Dckt. No. 104.

As a collateral issue, the trustee brought to the Court's attention that the Strict Compliance Order of June 28, 2012, called for conversion to Chapter 7 in the event of default under the Order. Notwithstanding the Order, the trustee indicated that his office would not request conversion to Chapter 7 based on the relatively small balance owed to unsecured creditors and the fact that those creditors are receiving 100% of their claim under the terms of Debtor's Chapter 13 Plan. The trustee also informed the Court that based on the

Chapter 13 Trustee's discussions with other Chapter 7 trustees, it is unlikely that a Chapter 7 trustee would administer the case when the aggregate amount owed to unsecured creditors is less than $5000.

## CONCLUSIONS OF LAW

Conversion of a case from Chapter 13 to Chapter 7 is governed by 11 U.S.C. § 1307. Subsections (a) and (c) of § 1307 read in relevant part:

> (a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.
> (c) [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1307.

Neither Wells Fargo nor the trustee seeks conversion to Chapter 7; however, the Court raised concerns at the hearing regarding enforcement of the Strict Compliance Order of June 28, 2012. These concerns were echoed by Debtor's counsel when he suggested that Debtor could potentially benefit from a conversion since there may be some equity in the Property. He did however acknowledge that he had no authority to seek a conversion on

Debtor's behalf.

"A . . . chapter 13 case shall be converted without court order when the debtor files a notice of conversion under . . . [§] 1307(a)." Fed.R.Bankr.Proc. 1017(f)(3). There has been no notice of conversion filed with the Court. Moreover, Debtor did not attend the hearing nor give her attorney any instructions on the matter. In fact, Debtor's attorney informed the Court that he has not communicated with Debtor since May 2013. Without a notice of conversion, the very least Debtor could have done to protect any equity she might have in the Property would have been to attend the hearing and petition the Court to convert the case. She did not do this; therefore, the Court will not consider a conversion to Chapter 7 under § 1307.

Even though Debtor failed to convert her case under § 1307, the Court is bound by the Strict Compliance Order of June 28. Upon further review, the precise wording of that Order reads in relevant part:

> IT IS FURTHER ORDERED That in the event debtor fails to comply with the terms of this order, the movant, through its attorney of record may file an affidavit setting forth the default served upon debtor and debtor's attorney. Upon the expiration of fourteen (14) days without the filing of a counteraffidavit by the debtor disputing the fact of default, an order *may* be entered converting the case to a Chapter 7 without further motion, notice or hearing.

7

Dckt. No. 64 (emphasis added). The Order does not require conversion. Rather, it gives the Court complete discretion on the issue. Because the Chapter 13 Plan will pay 100% to all creditors, there is no basis for believing creditors would be in a better position if the Court were to convert the case. Moreover, based on the trustee's statements, it is possible that a Chapter 7 trustee would not administer the case because of the relatively small amount owed to the unsecured creditors. In that scenario, Wells Fargo would only be further delayed in proceeding with its state law remedies. I can conceive of no rational reason to allow for such a delay.

For some time Wells Fargo has been embroiled in what is now fully revealed to be needless litigation over this matter, which, based on Debtor's failure to produce any evidence substantiating her allegations or attend this hearing, appears to have been brought in bad faith. Wells Fargo has done everything this Court has asked of it. It produced documents outlining Debtor's payment history and brought a loan analyst from Iowa to authenticate the accuracy of those records. The evidence shows that Debtor has accumulated a large post-petition arrearage and has not made any payment on her account since June 2012. Based on this evidence and Debtor's actions, or non-action as the case may be, the Court remains convinced that relief from the automatic stay rather than conversion is the appropriate order in this case.

At the March 2014 hearing, Wells Fargo requested that any grant of stay

relief contain language that would protect it against any future efforts by Debtor to stop or delay foreclosure. This remedy, referred to as *in rem* stay relief, was partially codified by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The Act added *inter alia* a new subsection to 11 U.S.C. § 362(d) which permits the court to grant *in rem* relief to a secured creditor with interest in real property under certain circumstances[1]. "Nevertheless, Congress gave no indication in enacting § 362(d)(4) that it intended to prevent bankruptcy courts from employing 11 U.S.C. § 105(a) . . . to enter orders, when necessary or appropriate, to prevent the harm arising from abusive filings. If anything, the 2005 amendments evidence a congressional intent that the courts crack down on abusive filings by debtors." In re McCray, 342 B.R. 668, 670 (Bankr. D.D.C. 2006); *accord* In re Johnson, 2013 WL 1702455, at *4 (Bankr. D.S.C. April 18, 2013); In re 4th Street East Investors, Inc., 474 B.R. 709, 712 (Bankr. C.D. Cal. 2012)(holding that *in rem* relief was warranted under the plain meaning of 11 U.S.C. § 105(a)); In re Henderson, 395 B.R. 893, 901 (Bankr. D.S.C. 2008). I agree with these courts in finding that Congress did not limit *in rem* relief to § 362(d)(4).

Shortly after receiving a letter from counsel in Atlanta informing Debtor that she was in default of the June 28, 2012, Strict Compliance Order, she filed her *pro se* Motion for Stay, Hearing, and Relief on November 27, 2012, which contained numerous allegations of bad faith behavior on the part of the lender. At the initial hearing on Debtor's Motion in

---

[1] These circumstances include petitions filed as part of a scheme to delay, hinder, or defraud creditors that involved either the transfer of all or part ownership of, or other interest in, the property without the consent of the secured lender or court approval; or multiple bankruptcy filings affecting the property. 11 U.S.C. § 362(d)(4).

December 2012, the Court concluded that she raised plausible issues regarding the arrearage amount and set the matter for trial. At no time since then has Debtor proffered evidence to back up any of her claims. What she has accomplished by filing her Motion is add to Wells Fargo's expenses in this case and delayed its ability to foreclose for approximately an additional eighteen (18) months, all the while remaining in possession of the Property without tendering any payments. For these reasons, I find that Debtor's Motion and her conduct since qualify as an abuse of process. She has wrongfully manipulated the legal system without any basis solely for her own personal benefit. I therefore grant *in rem* stay relief pursuant to § 105(a) to prevent any future filings from further delaying Wells Fargo's foreclosure efforts.

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is the ORDER of this Court that Debtor's case will not under any circumstances be converted to Chapter 7. Wells Fargo may proceed with its state law remedies pursuant to the Order for Relief from Stay entered by the Court on April 14, 2014.

It is further ORDERED that the filing of any bankruptcy petition by any party in any jurisdiction within the eighteen-month period following the entry of this Order shall not operate to stay Wells Fargo or its successors and assigns from foreclosing on the Property accurately described in a certain Security Deed executed by Debtor to Union

Federal Bank of Indianapolis, dated March 14, 2005, recorded in Deed Book 284V, Page 683, Chatham County, Georgia Records and having a known property address of 106-108 East 32nd Street, Savannah, Georgia 31401, which is the subject of this Order.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 5th day of May, 2014.